Turner, J.
 

 concurring. While I concur in the
 
 ger curiam
 
 opinion in this case, I believe that the purpose and necessity of the law governing these cases should be dwelled upon more fully.
 

 What the thirty relators urge us to do here is to
 
 *198
 
 exercise the legislative function in at least three instances, to wit:
 

 1. To amend Section 4785-70, General Code, by reading out of that section the words, “but not more than five. ”
 

 2. By disregarding the further provision of that section that the determination of the board of elections on a protest shall be final.
 

 3. By enlarging the statutory definition of mandamus.
 

 It is axiomatic that this court has no legislative power and we should not do indirectly what we have not the power to do directly. Whether we like the law is immaterial; legislative policy is .a matter solely for the General Assembly.
 

 In order to curb \the encroachment by the courts in the fields of legislation and policy, the Constitution now provides in Section 2, Article IY, in part, as follows :
 

 “No law shall be held unconstitutional and void by the Supreme Court without the concurrence of at least all but one of the judges, except in the affirmance of a judgment of the Court of Appeals declaring a law unconstitutional and void.” ‘
 

 When we are called upon to interpret the mandate of the legislative branch of the government which provides that the decision of a particular board or authority shall be final, we have no right to attempt to set aside a decision made by a board of elections where fraud or gross irregularity has not intervened. This is particularly true where a purely political question is involved.
 

 When it is claimed that compliance with a law is not required for the reason that the provisions of such law are merely directory and not mandatory, we should first find out why the particular law was enacted.
 

 
 *199
 
 The asserted right or power of a court to say that the plain language of an act of the General Assembly is merely directory and that rights may be acquired under such “directory” law, in disregard of the letter thereof, is to flaunt the law and make mockery of our boast that the courts do not legislate.
 

 Our first step in statutory interpretation is to find out, if we can, the purpose of the enactment — what did the General Assembly seek to accomplish by such legislation?
 

 Prior to its repeal, effective January 2, 1948, former Section 4785-70, General Code, provided for a minimum number of signatures on the petitions of candidates to be nominated or elected to various offices. There were no máximums fixed by the old law. The principal change made by the present law (Section 4785-70, General Code, effective January 2, 1948) was to fix a maximum number of signatures which might be submitted to the various election authorities.
 

 We take judicial notice of the fact that in the even-numbered years, prior ..to the repeal of former Section 4785-70, General Code, there might be and usually were filed with the boards of elections (and Secretary of State, who forwarded the various petitions filed with him to the several boards of elections) so many signatures that it made the investigation of such petitions a farce and seriously impeded the work of the boards of elections.
 

 When we stop to think of the number of precincts in each county and of the total in the state (at the last state-wide election, 9,067 precincts), with two political parties selecting their central committees, which may be done either by wards or precincts as the controlling party committee decides, it will be seen that such procedure tended to make impractical and impossible the canvassing of such petitions to determine , that they
 
 *200
 
 were signed by qualified electors of the two parties, especially when considered in connection with the further duties of the boards that are to be completed within six days (Section 4785-70, General Code). Unless such investigation can be made, there is a possibility of fraud, nay, an invitation to fraud, by which unscrupulous persons may defeat or confuse our two-party management.
 

 In addition to the foregoing, the county central committees of each party must certify to the respective boards of elections, not less than 100 days before the primary in even-numbered years, their respective apportionments of the number of delegates and alternates to be chosen in each ward and township in the county for the respective state conventions.
 

 It is provided in Section 4785-74, General Code, as follows:
 

 “All laws governing the nomination of persons as candidates at primary elections shall govern the election of persons as delegates or alternates to state conventions, as herein provided for, in the same manner as though the person seeking election as such delegate or alternate were a person seeking a nomination at a primary election.”
 

 This means that declarations of candidacies and petitions in support thereof must be filed with the board of elections within the same limit of time as provided for other candidacies. Then we must consider also the duties of the board in connection with the delegates to the national conventions of the two parties. (Section 4785-80, General Code.)
 

 On top of these very substantial and very important duties pertaining to party organization comes the examination by the board of the numerous petitions for Governor, Lieutenant Governor, Secretary of State, Attorney General, Auditor of State this year, members of Congress, including the senate and house,
 
 *201
 
 judges, state-wide, district and county, members of the state Senate and House of Representatives as well as the various county offices.
 

 Then we must look to the time schedule within which the board of elections must act. r
 

 Section 4785-70, General Code, provides in part:
 

 “All petition papers so transmitted to a board of elections, and all petitions accompanying declarations of candidacy filed with such board shall, under proper regulations, be open to public inspection until 6:30 p. m. of the eighty-fifth day before the day of the next primary election. Each board shall, not later than the eighty-fourth day before the day of such primary election examine and determine the validity or invalidity of the signatures on the petition papers so transmitted to, or filed with it and shall return to the Secretary of State all petition papers transmitted to it by the Secretary of State, as hereinabove provided for, together with its certification of its determination as to the validity or invalidity of signatures thereon, and shall return to each other board of elections all petition papers transmitted to it by such board, as hereinabove provided for, together with its certification of its determination as to the validity or invalidity of the signatures thereon.
 

 “Protests against the candidacy of any person filing a declaration of candidacy for party nomination or for election to an office or position, as herein provided for, may be filed by any qualified elector who is a member of the same political party as the candidate, or by the controlling committee of such party. Such protest must be in writing, and must be filed not later than 6:30 p. m. of the eightieth day before the day of the primary election. Such protest shall be filed with the election officials with whom the declaration of candidacy and petition was filed.”
 

 
 *202
 
 Bearing in mind that the petitions and declarations of candidacy are to he filed not later than ninety days prior to the primary election, the board of elections has but sis days in which to make the examination of the declarations of candidacy and the petitions for all of the various candidates to be voted on at the 1948 and following primary state elections, is there any wonder then that the General Assembly saw fit to limit the number of signatures that might accompany any petition?
 

 The provision of the present law in respect of the petition filed with the declaration of candidacy of a candidate for election as a member of the state central committee or the county central committee of a political party is that such petition “shall be signed by five, but not more than five, qualified electors of the district, county, ward, township or precinct within which electors may vote for such candidate.” (Section 4785-70, General Code.)
 

 It is hardly necessary to point out that, in the present state of public affairs, only members of the respective political parties shall be permitted to vote for candidates for the party-controlling organization. This is shown by the further provision of present Section 4785-70, General Code, that: “they [signers] shall sign such petition in the presence of a notary public or other official authorized by law to administer oaths, and such official shall certify-thereon that each of such signatures was placed thereon in his presence.”
 

 The relators did not comply with the law but filed more than five signatures. They claim and it is admitted that there were but five signatures on each of more than one petition which were simultaneously filed with the board of elections. The board of elections has no duty to pick out one of such petitions and to discard the others.
 

 A wrong approach to the solution of the question
 
 *203
 
 has been made by relators. Instead of recognizing that the only right they have to become candidates is to follow a duly enacted statute, they have assumed that unless they are forbidden in so many words to file more than one petition they may do so. In their brief they say :
 

 “ * * * but the board is not prohibited from receiving and filing a petition signed by more than five electors, and there is no express provision as to the effect that more than five signatures shall have as to such declaration of candidacy.”
 

 That is a wrong interpretation of the law.
 

 Because the General Assembly did not prohibit the board from receiving and filing su,ch petitions, this court is asked to issue a writ of mandamus requiring the board to approve the'petitions as filed.
 

 Section 12283, General Code, defining mandamus has been quoted in the
 
 per curiam
 
 opinion. We are asked to disregard or widen that definition. There is no duty enjoined upon the board of elections to accept more than one petition or to select one of more than, one petitions. On the contrary, when the entire election laws are examined one is persuaded that the dear legal duty specially enjoined upon the board of elections is to refuse to accept such petitions.
 

 Relators attempt an argument based upon the finding by the board that the petition and declaration of candidacy of each of the relators was insufficient for the reason that each was signed by more than five electors, contrary to Section 4785-70, General Code. It is asked how the several petitions of the respective candidates can be insufficient when they have more than sufficient signatures. The General Code answers that question. Section 4785-13, paragraph k, General Code, provides the board’s duty “to review, examine and certify the sufficiency and validity of petitions and nomination papers. ’ ’ The sufficiency referred to in the
 
 *204
 
 foregoing section is the legal sufficiency and not mere numbers. However, if the foregoing is not sufficient answer, we turn to Section 4785-80, General Code,, which provides in part as follows:
 

 “Primary election ballots shall contain the names-of all persons whose declarations of candidacy and petitions
 
 have been determined, to be valid.”
 
 (Italics ours.)
 

 The board of elections has not determined any one of the declarations of candidacy and petitions to be valid and this court should not in the absence of an allegation and proof of fraud or gross irregularity substitute its judgment for the determination of the-duly authorized authority.
 

 In paragraph two of the syllabus in the case of
 
 Sullivan
 
 v.
 
 State, ex rel. O’Connor,
 
 125 Ohio St., 387, 181 N. E., 805, it was held in respect of challenges of candidacies made in a case with facts analogous to-those of the instant case, as follows:
 

 “The question is one of political cognizance, and it is the duty of tbo board of elections to conduct a hearing upon such issue, upon notice to parties interested. By virtue of Section 4785-78 the determination of the-board, in the absence of fraud or corruption, is final and is not subject to judicial review.”
 

 The mandatory character of laws pertaining to declarations of candidacy and petitions for primary elections is illustrated by the case of
 
 Koehler, Jr.,
 
 v.
 
 Board of Elections of Butler County,
 
 125 Ohio St., 251,. 181 N. E., 107.
 

 The mandatory character of the election laws is further illustrated in the case of
 
 State, ex rel. Raines,
 
 v.
 
 Tobin et al., Board of Elections of Summit County,
 
 138 Ohio St., 468, 35 N. E. (2d), 779, in which the
 
 per curiam
 
 opinion is as follows:
 

 “Appellant filed with the Board of Elections of Summit county his declaration of candidacy for nomi
 
 *205
 
 nation as member of tbe council of Akron at the primary election to be held on August 12, 1941. He accompanied his declaration with the requisite fee and a petition signed by the required number of electors.
 

 “The board of elections rejected the declaration of candidacy for the sole reason that appellant had not signed and subscribed his name in the blank space at the end of the declaration in substantial conformity with the requirements of Section 4785-71, General Code. The appellant had signed his name when subscribing to and acknowledging the declaration before a notary public.
 

 “Appellant sought a writ of mandamus in the Court of Appeals to compel the board of elections to print his name on the primary ballot. The cause was heard upon a petition, an answer and a stipulation of facts-which recited that the sole question for determination was the sufficiency of the declaration of candidacy and that there had been a compliance with all other requisite matters. The Court of Appeals, one judge dissenting, denied a writ of mandamus, holding that the defect in the declaration was not merely technical.
 

 “No duty being specially enjoined by law upon the board of elections to place the name of appellant upon the ballot in the absence of a proper declaration of candidacy, the judgment of the ■ Court of Appeals, denying a writ of mandamus, is affirmed.” The decision received unanimous approval of all participating judges.
 

 In the still more recent case of
 
 Williams
 
 v. O’Neill, 142 Ohio St., 467, 52 N. E. (2d), 858, it was held:
 

 “An election contest is a political and not a judicial matter, and under Section 21, Article II of the Constitution of Ohio, the General Assembly is empowered to ‘determine, by law, before what authority, and in what manner the trial of contested elections shall be-conducted.’
 
 (Foraker
 
 v.
 
 Perry Twp. Rural Bd. of
 
 
 *206
 

 Edn.,
 
 130 Ohio St., 243, 199 N. E., 74, approved and followed.)”
 

 When the General Assembly, in enacting present Section 4785-70, General Code, made the following provision: “provided, however, that a petition filed with a declaration of candidacy of a candidate for election as a member of the state central committee or the county central committee of a political party shall be signed by five, but not more than five, qualified electors of the district, county, ward, township or precinct within which electors may vote for such candidate. The electors signing such petition shall be members of the same political party as the political party of which the candidate is a member. They shall sign such petition in the presence' of a notary public or other official authorized by law to administer oaths, and such official shall certify thereon that each of such signatures was placed thereon in his presence, ’ ’ there was prescribed the only method of becoming a candidate as a member of the state central committee or the county central committee of a political party. The fact that a definite number- of signatures was required in the case of candidates for membership of the state central and county central committees was a matter of concern to the General Assembly only.
 

 The General Assembly inserted in Section 4785-70, General Code, the following:
 

 “If they [board of elections] find that such candidate * * * has not fully complied with the law relating to primary elections, his declaration of candidacy and petition shall be determined to be invalid and shall be rejected, otherwise it shall be determined to be valid. Such determination shall be final.”
 

 Former Section 4785-78, General Code, which provided the former procedure in respect of protests, contained the phrase, “but no declaration of candidacy phaH be rejected for mere technical defects,” was re
 
 *207
 
 pealed by the last session of the General Assembly in Amended Substitute Senate Bill No: 109 and the quoted provision was not re-enacted.
 

 Section 4785-70, General Code, is an enabling provision without which one may not become a candidate and does not admit of any qualification or extension whatever.
 

 The respective demurrers are properly sustained.
 

 The limitation of time requires these cases to be decided promptly. If I had more time I could perhaps have written a shorter concurrence.